IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EUGENE CHUNG, ET AL. | Criminal Action No.<br><br>1:13-cr-00379-TCB-AJB |

### GOVERNMENT'S MOTION *IN LIMINE* FOR AN EVIDENTIARY HEARING TO ADMIT EVIDENCE OF DEFENDANTS' UNCHARGED CONDUCT AS INEXTRICABLY INTERTWINED WITH CHARGED CONDUCT OR AS FED. R. EVID. 404(B) EVIDENCE

The United States of America, by Sally Quillian Yates, United States Attorney for the Northern District of Georgia, and John S. Ghose, Assistant United States Attorney, files this motion *in limine* for an evidentiary hearing to admit evidence of Defendants' uncharged conduct as inextricably intertwined with the charged conduct, or as other acts evidence admissible under Rule 404(b) of the Federal Rules of Evidence.

Defendants Eugene Chung, Andy Vorasith, John Kim, David Choi, and Tommy Lee are charged in the Superseding Indictment in this case with participating in a Hobbs Act extortion conspiracy, occurring between May 2009 and November 25, 2011, that encompassed the extortion of three different victims, labeled "Victim # 1," "Victim # 2," and "Victim # 3" in the indictment. (Doc. 140, Count 1). The extortions of these victims are also charged in separate substantive extortion and firearms counts. (Doc. 140, Counts 1, 3, 4, 5, 6, 9, 11, 12).

1

These extortions occurred in conjunction with a variety of other illegal conduct. Some of this other illegal conduct, such as drug trafficking, was charged separately in the indictment. (Doc. 140, Counts 2, 7, 8, 10, 13, and 14). Other illegal conduct, such as firearms trafficking, gambling, and human trafficking, was not charged in the indictment.

The government now seeks to establish that this other uncharged conduct, which was part of the overall narrative of the case, should be admissible at trial as either inextricably intertwined with the evidence of the charged conduct, or as Rule 404(b) evidence that shows the defendants' motive, opportunity, intent, preparation, plan, knowledge, and absence of mistake in committing the charged counts.

I.

Count One of the Superseding Indictment describes the objectives of the conspiracy as follows:

> The purpose of the conspiracy was to generate money for the conspirators' enterprise through extortion by the wrongful use of force, violence, or fear; by extortionate and unlawful collection of debts; by promoting illegal activities that fostered Defendants' extortionate collection of debts, such as drug trafficking, gambling, prostitution, and firearms trafficking; and by protecting and promoting the enterprise through acts of violence, actual and implied threats of violence, and the cultivation and exploitation of the enterprise's reputation for violence.

(Doc. 140, at 2, ¶ 1).

As detailed in the manner and means section of Count One, which charges Hobbs Act extortion conspiracy, the defendants worked together in a criminal

enterprise that was designed to generate income for themselves through extortion and other means.  Defendant Chung acted in a leadership role and generated money for himself and his lieutenants by unlawfully extorting money on a regular basis from Victim 1, a bar owner in the Korean community in Gwinnett County, Georgia.  Chung extorted Victim 1 with the help of his co-defendants Andy Vorasith and John Kim, who acted as enforcers.  Chung fostered his extortion enterprise by promoting himself and his gang members, including his co-defendants, as violent individuals who had access to firearms and demonstrated a willingness to use them.  Chung also fostered his extortion enterprise by holding himself out to the community as someone who could provide other illegal services, including access to drugs, gambling, and prostitutes, as well as debt collection by force.

After the FBI became aware of Chung and his co-conspirators' extortion of Victim 1, the FBI introduced an undercover agent to investigate Chung's gang.  This undercover agent, identified as the "patron" in the indictment, posed as a wealthy Korean businessman who wanted to purchase marijuana, among other things.  The patron first met with Chung at a bar on March 10, 2010, in the Gwinnett County area.  During this initial meeting, which was audio-recorded, Chung explained that he could sell large quantities of marijuana.  Chung also offered the patron a "menu of other illegal services," including gambling, extortion, and debt collection by force.  (Doc. 140, at 5, ¶ 13).  Chung specifically asked the patron whether he had any debts that needed collecting.  When the patron replied that he had a client in Houston who owed him money, Chung offered to collect that debt for the patron by force.  Chung specifically stated that

he and his gang were "professionals" at beating people up, and "best at making people crippled." (Doc. 140, at 5, ¶ 13).

As detailed in the indictment, the patron eventually arranged for Chung and his gang, including co-defendants Vorasith, Choi, and Lee, to help the patron collect the debt from Victim 2, his purported client in Houston, on July 21, 2010. (Doc. 140, at 7, ¶ 19). Chung and his co-defendants received several thousand dollars for their services. (Doc. 140, at 5-8, ¶¶ 18, 19, 22.)

Chung and his gang profited from this and other extortions based on their ability to carry out violence, and their reputation for such violence. Indeed, when Victim 1 missed making a monthly "protection payment" to Chung, Chung and Vorasith responded with actual physical violence, including use of a firearm, resulting in serious physical injuries to Victim 1. (Doc. 140, at 3-4, ¶ 8). Similarly, when Victim 3 failed to pay the "drug debt" of an associate whom Victim 3 had introduced to Chung and his co-conspirators, Choi and Vorasith resorted to physical violence, including attempting to kidnap Victim 3. (Doc. 140, at 5, ¶ 14). And while no actual violence was ever brought upon Victim 2 (who was an undercover FBI agent), the threat of violence was pervasive throughout the defendants' interactions with him. (Doc. 140, at 7-8, ¶¶ 19, 21).

By cultivating their reputation for violence within their community, Chung and his gang were able to succeed in extorting their victims. The government therefore seeks to introduce evidence of the defendants' cultivation of actual and perceived violence through certain uncharged acts, such as uncharged extortions or extortion attempts, and evidence of firearms access and use. Chung and his gang also profited by promoting other illegal services complementary to the

charged conduct, since those services created a market for debts to be collected by force.  The government therefore seeks to introduce evidence of the defendants' other illegal services, such as gambling and prostitution, which complemented and fostered the charged conduct.

## II.

The two categories of uncharged conduct at issue in this motion—(1) conduct that cultivated defendants' reputation for violence and thus fostered their extortion conspiracy; and (2) other illegal services that fostered the charged conduct by creating a market for forcible debt collection—can be summarized as follows:

On March 1, 2010, Victim 1 recorded a meeting with Chung in which Victim 1 discussed introducing Chung to the "patron," whom Chung believed was a wealthy uncle of Victim 1, but who was actually an undercover FBI agent.  Much of the investigation leading up to the indictment in this case was conducted by this undercover FBI agent.  The manner in which this agent, the "patron," was introduced to Chung forms an integral part of the story of this investigation. During the March 1, 2010 recorded meeting, which the government would seek to introduce at trial, Chung starts off by speaking about his recent gambling endeavors, and his need for money.  Victim 1 discusses the patron, and how he has a lot of money and how Victim 1 will introduce him to Chung.  Victim 1 explains that the patron could be a good client for buying drugs from Chung. During this conversation, Victim 1 and Chung discuss a recent shooting in which

Chung was a target,[1] and how Chung intends to retaliate against the shooter by kidnapping him and taking him to North Carolina with his fellow gang members where they would kill him. This discussion is intermingled with their conversation about the patron.

On March 10, 2010, the patron met with Chung and some of his gang members for the first time. During this meeting, which was audio-recorded, the patron asked Chung was sort of business he was involved in. Chung replied that he operates gambling houses, sells marijuana, and also collects money for people. At the end of the meeting, Chung tells the patron that he will assist him with collecting an outstanding debt from one of the patron's purported clients in Houston, Texas (referred to as "Victim 2" in the indictment, but who was actually another undercover FBI agent).

On July 2, 2010, the patron recorded another meeting with Chung in which they discussed Chung's planned collection of the debt from Victim 2. During this conversation, Chung referred to his collection of debts from other "white guys," and also discusses a corrupt police officer and a corrupt correctional officer who both give Chung information to help him collect debts.

On July 20, 2010, during another recorded meeting between Chung and the patron, Chung referenced other extortions which he had participated in, saying words to the effect of, "white people get the impression really quick," and that "people in Atlanta know if you don't pay you get killed."

---

[1] The shooting referred to occurred on December 29, 2009, at 3725 Old Norcross Road, in Duluth, Georgia.

On July 28, 2010, during a recorded call between the patron and Chung, the two men discussed their extortion of Victim 2 at the Atlanta airport, which had occurred one week earlier. During this conversation, Chung again referenced other extortions he had conducted, saying words to the effect of, "with white people, you don't even have to slap them, they get scared if you just show up on their front door." Interspersed in this conversation is discussion of Chung's gambling operation.

On September 6, 2010, during a recorded call between the patron and Chung, Chung described how he had left several voice messages for Victim 2 threatening his safety, and the safety of his family, were he not to pay back the debt he supposedly owed the patron. While speaking to the patron, Chung again referenced other violent extortions which he had conducted previously, including one in which Chung sent the victim, a Korean person, to the hospital because he did not pay.

In February 2011, the patron recorded a number of recorded calls and meetings with Chung in which the two men discussed Chung's access to firearms, including a variety of illegal firearms, such as automatic machine guns and sawed-off shotguns. These conversations often occurred within the context of Chung lobbying the patron to hire him for additional illegal work, including gambling, prostitution, and extortionate debt collection. For example, on February 11, 2011, during a recorded conversation between the patron and Chung, Chung asked the patron for $10,000 to help Chung set up a "chicken house," *i.e.*, a house for prostitution. The patron explained to Chung that he would be going to Houston and would collect $10,000 there that he could then

7

give to Chung as an investment. During this conversation, Chung discussed the progress he was making in locating firearms for the patron, who said he wanted the guns for a friend. Chung explained to the patron that he could get a machine gun and four other guns. Similar conversations occurred between Chung and the patron on February 16, 19, and 22, of 2011. Then, on February 24, 2011, during a transaction in which Chung sold the patron five firearms, Chung solicited further business from the patron, including debt collection. Chung mentioned that people think he is in the Chinese mafia and that this helps him when he collects money for people.

### III.

Evidence is not extrinsic where it is "1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense; 2) necessary to complete the story of the crime; or 3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Nelson*, 321 Fed. Appx. 904, 906 (11th Cir. 2009) (citing *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007)). The intertwined evidence is admissible if it tends to "explain[] the context, motive, and set up of the crime" and is "linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985); *see also United States v. Prophete*, 522 Fed. Appx. 583, 585 (11th Cir. 2009); *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004).

Admission of the evidence of the uncharged conduct summarized in Section II above would be proper in this case because that evidence "arose out of the same transaction or series of transactions as the charged offense[s]." *Wright*, 392 F.3d at 1276-77; *see also United States v. Jeanty*, 358 F. App'x. 55, 58 (11th Cir. 2009) (quoting *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008)).  Indeed, the extortion and drug conspiracy conduct at issue occurred alongside the defendants offering a number of other illegal services to the undercover FBI agent who was the central investigator in this case.  Chung often referenced the uncharged conduct as a means to demonstrate his willingness and ability to provide the extortion and drug services to the patron.  To remove all reference to uncharged conduct from the undercover recordings would be to take the defendants' statements out of the context in which they actually occurred.  Admission of the uncharged conduct evidence is thus "necessary to complete the story of the crime," because to do otherwise would be to present a misleading view of the investigation to the jury.  *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985); *see also United States v. U.S. Infrastructure, Inc.*, 576 F.3d 1195 (11th Cir. 2009) (evidence of other bribes paid by defendant during the same time as the charged bribes was admissible as inextricably intertwined events in relation to the charged offenses).

Furthermore, even if the uncharged conduct summarized in Section II were not admissible as intrinsic evidence, a separate alternate basis for admission of this uncharged conduct is available under Federal Rule of Evidence 404(b).  Rule 404(b) provides, in pertinent part, as follows:

9

> Evidence of a crime, wrong, or other act . . . . may be admissible for . . . proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident.

The Eleventh Circuit has repeatedly stated that Rule 404(b) is a rule of inclusion rather than exclusion. *See, e.g., United States v. Perez-Tosta*, 36 F.3d 1552, 1562 (11th Cir. 1994) (finding that 404(b) is a rule of inclusion, and that such evidence should not be excluded lightly when central to the government's case); *United States v. Cohen*, 888 F.2d 770, 776 (11th Cir. 1989) (holding that the rule is one of inclusion).

For evidence to be admissible under Rule 404(b), it must meet the following criteria under the *Beechum*[2] test, which requires that: (1) the evidence must be relevant to a proper purpose, and not just the defendant's character; (2) the government must offer sufficient proof that the defendant committed the other crime, wrong, or act; and (3) the probative value must not be substantially outweighed by its undue prejudice. *See United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (citation omitted); *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)[3]; *see also United States v. Mills*, 138 F.3d 928 (11th Cir. 1998); *United States v. Cancelliere*, 69 F.3d 1116 (11th Cir. 1995).

The evidence of uncharged conduct summarized in Section II meets all three *Beechum* criteria for admissibility. First, the uncharged conduct goes to the defendant's intent to commit the charged offenses of conspiracy, extortion, and

---

[2] *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978)(en banc).

[3] *See Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981) (holding that decisions of the Fifth Circuit dated September 30, 1981 or earlier shall be binding precedent in the newly created Eleventh Circuit).

possession of marijuana with the intent to distribute, and knowledge of the same.[4] A likely defense at trial, judging from arguments made by defendants' attorneys at the magistrate and district court detention hearings, is that these defendants were either not serious when they made threats to their victims, especially Victim 2, or were not fully knowledgeable that they were participating in a Hobbs Act extortion conspiracy.  The extent and detail of the illegal services offered to the undercover agent, however, and the references made to other uncharged conduct during these exchanges, including other extortions, would rebut any claim of defendants' ignorance, and therefore goes directly to the heart of an element that the government will be required to prove at trial.  The evidence summarized in Section II should thus be admitted as probative of defendants' intent, knowledge, and lack of mistake.  *See, e.g., United States v. U.S. Infrastructure, Inc.*, 576 F.3d 1195 (11th Cir. 2009) (evidence of other bribes paid by defendant during the same time as the charged bribes was admissible); *United States v. Grossman*, 233 Fed. Appx. 963, 968-69 (11th Cir. 2007) (district court properly admitted, under Rule 404(b), testimony of witness that defendant had molested her as a child as proof of defendant's intent and motive to travel interstate to molest a 9-year-old victim); *United States v. Dorta*, 157 Fed. Appx. 197, 200 (11th Cir. 2005) (evidence of defendant's prior involvement in home invasion robbery relevant to whether he intended to invade a drug stash house; also defendant's prior bank burglary was probative of his intent to steal); *United*

---

[4] The defendants have inherently placed their intent at issue by pleading not guilty, and thus the government will need to prove their criminal intent at trial. *United States v. Cortes-Sanchez*, 312 F. App'x 155, 158 (11th Cir. 2008); *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998).

*States v. Sanchez*, 790 F.2d 1561, 1564 (11th Cir. 1986) (evidence of prior money laundering scheme admissible to prove intent for charged conspiracy because the prior scheme "was similar in time and form to the charged conspiracy and, as such, aided in establishing that [defendant] acted with knowledge that his acts were illegal").

The second prong of the *Beechum* test, requiring sufficient proof of the uncharged conduct, will also be met. Most of the uncharged evidence summarized in Section II comes directly from admissions made by defendants during exchanges with an undercover FBI agent or source. If the "uncorroborated word of an accomplice" is "sufficient proof of the defendant's commission of the acts," *United States v. Prophete*, 522 Fed. Appx. 583, 585 (11th Cir. 2013), then surely a defendant's own admissions, combined with eyewitness accounts from undercover FBI agents or sources, is sufficient as well. *See United States v. Shores*, 966 F.2d 1383 (11th Cir. 1992) (bank robbery defendant's uncorroborated admission that he had committed another robbery was sufficient to be admissible under Rule 404(b)).

Finally, as explained more fully in Section IV below, the third prong of the *Beechum* test is also satisfied here because the undue prejudice of admitting the other acts evidence does not substantially outweigh its probative value. The third prong balancing test "requires a common sense assessment of all the circumstances surrounding the extrinsic offense." *United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978) (en banc). The probative value of this evidence is not *substantially* outweighed by its undue prejudice because: (1) this evidence is central and critical to the government's case, *see United States v. King*, 713 F.2d

12

627, 632-633 (11th Cir. 1983); (2) this evidence involves similar conduct for which the defendants are already indicted, *see United States v. Campbell*, 49 F.3d 1079, 1083-84 (5th Cir. 1995); and (3) the Court could give a limiting instruction to the jury to avert any possibility of prejudice, *see Eleventh Circuit Pattern Jury Instructions (Criminal)*, Special Instructions # 4 (2003).

## IV.

Under Rule 403, this Court may exclude relevant evidence, including intrinsic acts evidence, if it determines that the probative value of such evidence is substantially outweighed by the danger of undue prejudice to the defendant. *See* Fed. R. Evid. 403. It is well-established, however, that Rule 403 is an "extraordinary remedy" that "should be used only sparingly since it permits the trial court to exclude concededly probative evidence." *United States v. Fallen*, 256 F.3d 1082, 1091 (11th Cir. 2001). Indeed, the Eleventh Circuit has opined that the "major function" of Rule 403 "is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Cross*, 928 F.2d 1030, 1048 (11th Cir. 1991).

The evidence summarized in Section II above, relating to the defendants cultivation of their reputation for violence in support of their extortion conspiracy, and their promotion of other complementary illegal services, is probative and central to the government's ability to prove the defendants' criminal intent to extort and distribute drugs. The evidence sought to be admitted will thus provide useful context to — and help complete — the government's narrative. *See Old Chief v. United States*, 519 U.S. 172, 189 (1997)

("[J]urors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard.").

Evidence central and critical to the government's case is highly probative and should not be excluded under Rule 403(b) where the potential for unfair prejudice is low. *United States v. King*, 713 F.2d 627, 632-633 (11th Cir. 1983) (reversing exclusion of evidence where, "as compared to the government need, the danger of unfair prejudice suggested by the defendants and supported by the record is *de minimis*."). The potential for prejudice here is low, particularly as to references to other extortions and the possession and use of firearms, because that conduct is already part of the extortion and firearms counts. *See United States v. Campbell*, 49 F.3d 1079, 1083-84 (5th Cir. 1995). Furthermore, in order to mitigate against any potential *undue* prejudice, the Court could give a limiting instruction to the jury during its final charge in order to avert that possibility of prejudice. *See* Eleventh Circuit Pattern Jury Instructions (Criminal), Special Instructions # 4 (2003); *see also United States v. Pearson*, 746 F.2d 787 (11th Cir. 1984).

Admission of the evidence summarized in Section II above would not be error because the probative value of that evidence is not s*ubstantially* outweighed by the danger of *undue* prejudice to the defendant. *See, e.g., United States v. Jernigan*, 341 F.3d 1273 (11th Cir. 2003) (evidence of gang membership admissible for relevant purposes); *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994) (evidence of defendant's acts of violence connected with his drug enterprise admitted even though the indictment did not allege any acts of violence); *United States v.*

*Terzado-Madruga*, 897 F.2d 1099 (11th Cir. 1990) (evidence that defendant and his confederates possessed firearms admitted in drug trial); *United States v. Finestone*, 816 F.2d 583 (11th Cir. 1987) (evidence of murder admitted to establish participants' membership in the RICO conspiracy); *United States v. Martin*, 794 F.2d 1531 (11th Cir. 1986) (evidence that defendant previously sold drugs from location where guns were found admitted in gun possession trial).

V.

For the reasons stated above, the government respectfully submits that the Court should admit the evidence summarized in Section II above because that evidence is inextricably intertwined with the evidence of the charged conduct, or, alternatively, because that evidence is admissible under Rule 404(b) as probative of the defendants' intent to commit the charged crimes, and knowledge of their participation in those crimes. In the event that this case goes to trial, the government requests an evidentiary hearing to further establish the admissibility of this evidence, and reserves the right to submit additional briefing on this topic as necessary.

        Respectfully submitted,

        SALLY QUILLIAN YATES
          *United States Attorney*

/s/ JOHN S. GHOSE
    *Assistant United States Attorney*
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181
john.ghose@usdoj.gov
Georgia Bar No. 446568

## CERTIFICATE OF SERVICE

I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

| | |
|---|---|
| Steve Sadow, Esq. | Millie Dunn, Esq. |
| Don Samuel, Esq. | *Attorney for Andy Vorasith* |
| *Attorneys for Eugene Chung* | |
| | |
| Leigh Finlayson, Esq. | Ravi Rayasam, Esq. |
| *Attorney for John Kim* | Musa Ghanayem, Esq. |
| | *Attorney for David Choi* |
| | |
| John Lovell, Esq. | |
| *Attorney for Tommy Lee* | |

December 18, 2014

/s/ JOHN S. GHOSE

JOHN S. GHOSE

*Assistant United States Attorney*