IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EUGENE THOMAS CHUNG,<br>a/k/a Yoo Jin Chung; JONG SUNG<br>KIM, a/k/a John Kim; and<br>THOMAS JUNGWON LEE, a/k/a<br>Tommy Lee,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NUMBER 1:13-cr-379-TCB |

## ORDER

This case comes before the Court on Magistrate Judge Alan J. Baverman's Final Report and Recommendation (the "R&R") [329], which recommends denying Defendant Jong Sung Kim's motion to suppress statements [77 & 99[1]] and motion to sever counts [170]. The R&R further recommends overruling in part and sustaining in part the objections filed by Defendants Kim [184], Thomas Jungwon Lee [185], and Eugene Thomas Chung [186] to the Government's *Bruton*

---

[1] Kim's motion to suppress statements is Document 70; Document 99 is a supplemental brief in support of the motion.

redactions [175]. If the Court adopts the recommendation with respect to the *Bruton* redactions, the R&R recommends that Kim's motion to sever Defendants [75] be denied. Kim has filed objections to the R&R [334].

## I.   Legal Standard on Review of a Magistrate Judge's R&R

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)).[2] Where a party objects to an R&R, a district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). Those portions of the

---

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by the Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing continuing validity of *Nettles*).

R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).[3]

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

After conducting a complete and careful review of the R&R, the district judge may accept, reject or modify the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C). The district judge also has discretion to decline to consider arguments that were not raised before the magistrate judge.

---

[3] *Macort* addressed only the standard of review applied to a magistrate judge's factual findings, but the Supreme Court has held that there is no reason for a district court to apply a different standard of review to a magistrate judge's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases).

3

*Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Id.* (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

## II.  Analysis

### A.  Motion to Suppress Statements [77 & 99]

Kim is charged in four counts of an eleven-count second superseding indictment [259] with conspiring to commit Hobbs Act extortion and committing or aiding and abetting three substantive Hobbs Act extortions. The original indictment was issued on September 17, 2013. Two days later, at approximately 6:05 a.m., Kim was arrested by FBI agents at his residence in Suwanee, Georgia, and taken to the FBI's Atlanta office and interrogated. He filed a motion to suppress the statements he made during that interrogation. The R&R recommends denying that motion because it finds that Kim intelligently, knowingly

and voluntarily waived his *Miranda*[4] rights and that his subsequent statements were voluntary.

With respect to the waiver of his *Miranda* rights, Kim first objects that the FBI form he initialed to indicate he understood his rights does not support a finding that his waiver of those rights was knowing and voluntary. The Court disagrees. Contrary to Kim's assertion, the FBI agent's testimony about Kim's waiver of his rights is not inconsistent with the R&R's findings. The R&R noted that Kim placed his initials next to each line of the form and then signed the bottom of it, and that he did so after the agent reviewed the form with him. [329] at 3–4. That is not inconsistent with the agent's testimony that Kim verbally acknowledged his rights only once, after the agent explained the form to him. [276] at 33. Moreover, the evidence shows that the form was read to Kim in both English and his native Korean, and there is no claim that Kim was tricked or threatened into speaking with the agents.

Similarly, the FBI agents' failure to advise Kim of the charges against him did not render his waiver involuntary. As the R&R

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

correctly held, law enforcement officers are not required to "'supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.'" *United States v. Barner*, 572 F.3d 1239, 1244 (11th Cir. 2009) (quoting *Moran v. Burbine*, 475 U.S. 412, 422 (1986)). In *Barner*, a defendant was questioned about several home invasions, which he denied being involved in, and his own possession of drugs, which he admitted to. The Eleventh Circuit held his waiver of rights was knowing and voluntary even though law enforcement did not advise him that they were actually conducting a drug investigation, not an investigation into the home invasions. Here, by contrast, there is no dispute that Kim was made aware of the nature of the charges against him, i.e., that he was suspected of committing extortion, which he repeatedly denied. Thus, the FBI agents' failure to inform Kim of the specific charges in the indictment did not render his waiver involuntary.

    Kim next contends that the circumstances surrounding his arrest rendered both his waiver of his *Miranda* rights and his subsequent statements involuntary. Again, the Court is not persuaded. Although

Kim was arrested early in the morning, the evidence does not support his claim that "[t]welve . . . armed agents burst into [his] home . . . ." [334] at 3. Rather, the agent who was present the morning of the arrest testified that the "agents knocked on the door and made entry. It was [a] peaceful, smooth takedown." [276] at 11; *see also id.* at 42 (another agent testifying to his belief that agents "just knocked on the door and someone opened the door").

Kim was indeed handcuffed, but he never complained about the handcuffs, nor is there evidence that law enforcement used excessive force or violence in connection with his arrest. The Eleventh Circuit has previously held that far more violent arrests did not render a waiver of rights or subsequent statements involuntary. *See, e.g., United States v. Rouco*, 765 F.2d 983, 993 (11th Cir. 1985) (holding that the defendant's confession was voluntary even though it was given after the defendant was placed face-down on hot parking-lot pavement and handcuffed, an agent put his foot on the defendant's shoulders and pointed a gun at the defendant's head, and the defendant was placed in the back of an

unairconditioned police car with the windows rolled up for twenty minutes in July in Miami).

Kim's next argument turns on the fact that he was never taken to or informed of his right to contact the South Korean consulate. [334] at 3. Pursuant to Article 36 of the Vienna Convention on Consular Relations, "when a national of one country is detained by authorities in another, the authorities must notify the consular officers of the detainee's home country if the detainee so requests." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 338–39 (2006). The Supreme Court has explained that the rights conferred by Article 36—which concern only notifying the consulate of a detainee's arrest or detention and do not include a right "to have law enforcement authorities cease their investigation pending any such notice"—"add[] little" to a defendant's *Miranda* rights, and therefore suppression is not the appropriate remedy for a violation of a defendant's rights to consular notification. *Id.* at 349–50.

Kim cites to no legal authority—and the Court has found none—supporting his argument that the failure to inform him of his Vienna Convention rights rendered the waiver of his *Miranda* rights

involuntary. *See generally United States v. Rodrigues*, 68 F. Supp. 2d 178, 184 (E.D.N.Y. 1999) (noting that "[p]rejudice has never been—nor could reasonably be—found" from a violation of Article 36 "in a case where a foreign national was given, understood, and waived his or her *Miranda* rights . . . , because the advice a consular official would give would simply augment the content of *Miranda*, which the foreign national has already waived"); *United States v. Domingo*, No. 2:09-cr-42-FtM-36SPC, 2010 WL 4941678, at *10–11 (M.D. Fla. Oct. 28, 2010) (R&R holding that it "would not be appropriate to consider the failure to inform the Defendant of his right to consular notification when evaluating the voluntariness of his waiver"), *adopted by district court after de novo review of legal conclusions*, 2010 WL 4940052 (M.D. Fla. Nov. 29, 2010); *United States v. Contenti*, No. 07-127(CCC), 2007 WL 2317382, at *6 (D.P.R. Aug. 8, 2007) (concluding that "defendant's argument that the agents' failure to notify consular authorities should prompt the Court to suppress [the defendant's] statements made after his wavier of the *Miranda* rights is untenable").

Finally, with respect to the voluntariness of Kim's statements, the Court likewise finds that the R&R is correct and Kim's objections are without merit. The questioning took place in English and Korean and lasted about one hour, after which the agents concluded they were at a dead end. Kim remained handcuffed in the front but never complained about the handcuffs, and he never indicated that he wanted to stop talking or desired to speak with an attorney. Kim was told that he potentially faced a sentence of twenty years, but that is not tantamount to an inherent or implied promise that if he confessed he would receive a lighter sentence. *See, e.g.*, *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978) ("A truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will.").[5]

In conclusion, the Court finds that the R&R is sound in its reasoning and conclusions with respect to the motion to suppress. The Court will adopt that aspect of the R&R over Kim's objections.

---

[5] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

### B.   Motion to Sever Counts [170]

As noted above, Kim is charged in just four of the fourteen counts contained in the indictment, and he has moved to sever the trial of those four counts from the trial of the remaining counts, which involve allegations of extortion against different victims or of different crimes altogether. Kim therefore contends that he will be unduly and unfairly prejudiced if severance is not granted. The R&R recommends denying this motion as well. As Kim concedes in his objections, much of this motion is rendered moot by the guilty pleas entered by many of his codefendants.

In any event, the Court finds that the R&R correctly concludes that severance is not warranted in this case. The Court is unpersuaded that a jury would be unable to follow the Court's instructions and independently evaluate the evidence against Kim and the evidence offered only against his codefendants. *See United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976) ("The remedy of severance is justified only if the prejudice flowing from a joint trial is clearly beyond the curative

powers of a cautionary instruction."). Thus, the Court will deny the motion to sever counts.[6]

### C.     Motion to Sever Defendants [75]

Finally, Kim moves to sever his trial from that of any codefendant who gave statements implicating him, pursuant to *Bruton v. United States*, 391 U.S. 123 (1968). Judge Baverman directed the Government to file proposed redactions to those statements [175], and Kim, Lee, and Chung filed objections to the proposed redactions [184, 185, & 186, respectively].

The R&R discussed at length Defendants' objections to the Government's proposed redactions. Neither Lee nor Chung have objected to the R&R's recommendation that their objections be sustained in part and overruled in part. *See* [329] at 43–44 (recommendation as to Lee's objections); *id.* at 45 (recommendation as to Chung's objections). The Court finds no plain error in that aspect of the R&R and therefore will adopt it.

---

[6] As correctly observed in the R&R, the Court has a "continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960). Thus, if as trial approaches Kim believes that severance remains necessary to avoid prejudice, he may reassert this motion.

12

Lee raised two objections to the Government's proposed redactions of his statement. First, he objected to the Government's proposed redaction of the statement that "KIM has never extorted the money from anyone not even once." [175-3] at 1; [184] at 2–3. The R&R recommends sustaining this objection, as the statement at issue does not implicate any Defendant's right to cross-examination and is therefore not subject to *Bruton* redaction. There is no objection to this aspect of the R&R, and the Court agrees with it.

Second, Lee objected to the Government's proposed redaction of the fifth paragraph of his statement, which is as follows, with the Government's proposed redactions underlined:

> On the night of ____'s broken nose incident at the W, KIM was in the same room with LEE, ANDY and CHUNG. KIM and LEE tried to break the fight between ____ and CHUNG but they walked out when they saw CHUNG pulled out his gun. LEE grabbed CHUNG from the back preventing him from using the gun. ____ was sitting down at [sic] the whole time. CHUNG always carried his gun in the holster at his waist. KIM was the only one who walked out of the room and the rest stayed in the room with ____. KIM has never received the money from ____ for CHUNG. KIM used to get free drinks at the W.

[175-3] at 1–2. Lee objected that the proposed redaction failed to solve the *Bruton* problem with respect to Chung and that the Government was improperly using *Bruton* redactions to edit out a mistake as to the location of the incident (which the Government contends was Khabin, not the W). The R&R recommends overruling as moot this objection, as the Government does not intend to use the statement, regardless of whether it was memorialized correctly or not.

In his objections to the R&R, Lee asserts that the mistake as to the location of the nose-breaking incident is beneficial and exculpatory to him, did not implicate another co-defendant, and was not subject to redaction under *Bruton*. The Court agrees, but in light of the fact that Chung has entered a guilty plea and the Government does not intend to use this statement, the R&R correctly concludes that the issue is moot. Thus, the Court will adopt the R&R's recommendation that the motion to sever be denied.[7]

---

[7] As with Kim's motion to sever counts, the motion to sever Defendants and *Bruton* redactions can be revisited if necessary as trial approaches. The Court further believes that the admissibility of the statement that "KIM has never extorted the money from anyone not even once" is likewise best resolved at a future time closer to trial, when the Court can hear from both parties on the issue.

14

## III. Conclusion

For the foregoing reasons, the Court adopts as its Order the R&R [329], including its recommendations (*see* [329] at 41–45) with respect to Defendants' objections [184, 185, 186] to the Government's proposed *Bruton* redactions [175]. Kim's motion to suppress statements [77 & 99] is denied, his motion to sever counts [170] is denied, and his motion to sever Defendants [75] is denied.

IT IS SO ORDERED this 28th day of October, 2016.

_____
Timothy C. Batten, Sr.
United States District Judge